**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**SUZANNE CRENSHAW-MARTIN,**
               **Plaintiff,**

**v.**                                              **CIVIL NO. 3:14-CV-1203-P-BK**

**CAROLYN COLVIN,**
**Acting Commissioner of the Social**
**Security Administration,**
               **Defendant.**

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

This case has been referred to the undersigned for Findings, Conclusions, and

Recommendation on the parties' cross motions for summary judgment.  For the reasons that

follow, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 17, be **DENIED**,

Defendant's *Motion for Summary Judgment*, Doc. 18, be **GRANTED**, and **t**he Commissioner's

decision be **AFFIRMED**.

**I.  BACKGROUND**

**A.     Procedural History**

Plaintiff filed applications for disability insurance benefits (DIB) and supplemental

security income (SSI) in February 2011, alleging a disability onset date of July 2009, due to

seizure disorder, lumbar disc desiccation with radiculitis, lumbosacral spondylosis, hypertension,

migraines, chest pain, syncope, and sleep apnea.  Doc. 15-6 at 2-18; Doc. 15-7 at 6.[1]  Her

applications were denied at all administrative levels, and she now appeals to the United States

---

[1]  The following background comes from the transcript of the administrative proceedings, which
can be found at Doc. 15.

District Court, *pro se*, pursuant to 42 U.S.C. § 405(g).[2]  Doc. 15-3 at 2-5, 16-29; Doc. 15-5 at 2-9, 12-18.

**B.**   **Facts**

Plaintiff was 43 years old on her alleged disability onset date, and she had a high school education plus a semester of college and past relevant work experience as a retail clerk, administrative assistant, and office clerk.  Doc. 15-3 at 41, 43-44.  In July 2009, Plaintiff lost consciousness and, after a similar episode a couple of days later, she sought medical treatment. Doc. 15-10 at 17, 21.  Testing revealed no acute diagnostic abnormalities.  Doc. 15-10 at 24, 28. In October 2009, Dr. Ingrid Arnold filled out a form indicating that she had seen Plaintiff twice in the prior three months and opining that Plaintiff was completely limited by cardiac problems, was severely limited in her physical functional capacity, incapable of even sedentary activity, and, had a significant loss of psychological, physiological, personal, and social adjustment abilities.  Doc. 15-11 at 33.  Dr. Arnold averred that Plaintiff was totally disabled, but stated that her prognosis for recovery was good and estimated that she could return to full time work by July 2010.[3]  Doc. 15-11 at 33.

In November 2009, Plaintiff was diagnosed with lumbar degenerative disc disease and lumbar radiculitis with resulting low back and left lower extremity pain.  Doc. 15-8 at 14.  She underwent an epidural steroid injection.  Doc. 15-8 at 14.  Plaintiff was noted to have minimal disc desiccation with a mild posterior disc bulge at L5/S1, and she reported that the injection did not help significantly.  Doc. 15-8 at 15, 19.  The following month, she exhibited mild pain with lumbar flexion/extension, no tenderness to palpation over the spinous processes, and a negative

---

[2] Plaintiff also appeared at the administrative hearing before the administrative law judge *pro se*. Doc. 15-3 at 36-38.
[3] In July 2010, Dr. Arnold filled out the same form, making similar findings and opining that Plaintiff could return to full time work in October 2010.  Doc. 15-11 at 34.

straight leg raise, but a mild antalgic gain on the left side.  Doc. 15-8 at 21.  She was referred to physical therapy.  Doc. 15-8 at 22.  Plaintiff also began receiving prescription medication treatment for migraine headaches in November 2009.  Doc. 15-8 at 76.  Given her episodes of passing out, her doctor instructed her to avoid working with ladders or at heights and to avoid heavy lifting, using heavy machinery, and any activity where, if she had a seizure, she could hurt herself or others.  Doc. 15-8 at 76.  In December 2009, it was noted that Plaintiff's only significant musculoskeletal complaint was of pain in the left thigh, and she denied any significant history of back pain.  Doc. 15-8 at 86.

    In March 2010, Plaintiff was seen by a doctor after passing out on a couple of occasions. She had normal strength, tone, and reflexes in all four extremities and a normal gait.  Doc. 15-8 at 45.  Tests revealed no evidence of epilepsy, and an MRI and EEG of the brain were normal. Doc. 15-8 at 46, 53.  An x-ray of Plaintiff's lumbar spine revealed no abnormalities.  Doc. 15-11 at 20.  In April 2010, it was noted that Plaintiff had four episodes of losing consciousness over the previous six months.  Doc. 15-8 at 7-8.  In March 2011, she visited a clinic as a new patient, stating that she needed disability benefits due to her hypertension and lower back pain.  Doc. 15-9 at 23.  She stated that she had headaches several times per week, for which she had been taking over the counter medication, and she had been off all other medications for several months.  Doc. 15-9 at 23.  In July 2011, Plaintiff continued to complain of migraines and lower back pain and said medication did not help with the pain.  Doc. 15-10 at 103.  She requested a continuation of disability benefits from 2009.  Doc. 15-10 at 103.  In August 2011, Plaintiff was given a new muscle relaxant and referred to physical therapy and to an orthopedist for her lower back pain.  Doc. 15-11 at 9.  The following month, Plaintiff again sought medical treatment for

her lower back pain and stated that naproxen and muscle relaxants alleviated the pain, and she

obtained another prescription for naproxen.  Doc. 15-10 at 115-16.

      Plaintiff had an orthopedic consultation in October 2011 with Dr. Michael Bolesta for her

lower back and left leg pain.  Doc. 15-12 at 123.  Dr. Bolesta observed that Plaintiff had a

normal gait but refused to tandem gait or tiptoe or heel walk.  Doc. 15-12 at 124.  Plaintiff's

muscle strength was 5/5 in her lower extremities, her sensation was intact, her range of motion

was full, and she had a negative straight leg raise, although she did have tenderness in her lumbar

segments.  Doc. 15-12 at 124.  When told that she should not need narcotic medication for pain

control, Plaintiff "seemed very displeased with this news."  Doc. 15-12 at 124.  Dr. Bolesta gave

Plaintiff work restrictions comprised of (1) avoiding bending and twisting her spine; (2) taking

sit and stretch breaks for 10-15 minutes every three to four hours; and (3) lifting no more than 50

pounds.  Doc. 15-12 at 124.  An x-ray taken that month revealed osteoarthritis involving the

facet joints of the last three lumbar segments with no subluxation.  Doc. 15-12 at 127.

      Dr. Bolesta examined Plaintiff again in December 2011, and she complained of

worsening pain although her physical examination was largely unchanged.  Doc. 15-12 at 11-12.

An MRI conducted that month revealed that Plaintiff had broad-based disc bulges at L3/4, L4/5,

and L5/S1 with bilateral facet hypertrophy.  Doc. 15-12 at 29.  The report concluded that

Plaintiff had mild degenerative disc disease of the lumbar spine, but no evidence of neural

impingement. Doc. 15-13 at 35.  After Dr. Bolesta reviewed Plaintiff's MRI, he increased

Plaintiff's work restrictions slightly, advising her to lift no more than 30 pounds.  Doc. 15-13 at

42.

      In January 2012, Plaintiff reported that her walking was not limited, she used no assistive

devices, and her activities of daily living were normal, but she needed extra time or to sit down

while doing them.  Doc. 15-13 at 47.  Plaintiff underwent an electrodiagnostic study that month, which revealed that there was no evidence of lumbar radiculopathy or peripheral neuropathy. Doc. 15-13 at 51.  The administering physician noted that Plaintiff was obese and the numbness and tingly feeling she was experiencing in her left thigh could be consistent with meralgia paresthetica.[4]  A February 2012 x-ray of Plaintiff's lumbar spine revealed early discogenic and facet degenerative changes at several levels, indicative of early degenerative changes.  Doc. 15-13 at 142.

## C.     The ALJ's Findings

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 11, 2009, the alleged onset date.  Doc. 15-3 at 18.  At step two, the ALJ found that Plaintiff had the following "severe" impairments only in combination: (1) mild obesity and (2) minimal lumbar disc disease.  Doc. 15-3 at 18.  At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment for presumptive disability under the regulations.  Doc. 15-3 at 24.  The ALJ then determined that Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b).  Doc. 15-3 at 24.  At step four, with the assistance of vocational expert testimony, the ALJ found that Plaintiff was capable of performing her past relevant work as a print shop supervisor, shoe sales person, municipal clerk/general clerk, customer service clerk, and assembly line worker.  Doc. 15-3 at 28.  Therefore, the ALJ

---

[4] Meralgia paresthetica is characterized by burning pain, tingling, pruritus, or formication along the lateral aspect of the thigh in the distribution of the lateral femoral cutaneous nerve due to entrapment of that nerve.  *Stedman's Medical Dictionary* (updated Nov. 2014), available on Westlaw.  The condition can be caused by obesity or weight gain among other things.  DISEASES AND CONDITIONS, Meralgia Paresthetica, http://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/basics/causes/con-20030852 (last visited Jan. 29, 2015).

concluded that Plaintiff was not disabled from the date of onset through the date of the decision. Doc. 15-3 at 28.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A).  In order to qualify for a period of disability and DIB, a claimant must prove that her disability began on or before the date her insured status expired.  *See* 42 U.S.C. §§ 423(a), (c); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); 20 C.F.R. § 404.131.

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden

shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III.   ARGUMENT AND ANALYSIS

Plaintiff has filed a brief which, liberally construed, argues that substantial evidence does not support the Commissioner's decision. Doc. 17 at 1-3; *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (providing that the courts should liberally construe *pro se* pleadings). Plaintiff also has appended to her brief additional medical records. Doc. 17 at 4-41. The records reflect, *inter alia*, that Plaintiff was diagnosed with major depressive affective disorder with psychotic behavior in March 2014. Doc. 17 at 4.

Defendant responds that the Court cannot issue factual findings based on Plaintiff's new medical evidence because review in this case is limited to determining whether to remand for the ALJ to consider the newly presented evidence. Doc. 18-1 at 5-6. Defendant also points out that

some of the "new" evidence that Plaintiff submitted is already contained in the administrative record.  Doc. 18-1 at 5-6.  As to the evidence that is new, Defendant contends that it is not material because it post-dates the ALJ's decision and does not relate to the time period for which disability benefits were denied, or there is no reasonable possibility that the documents would change the ALJ's decision.  Doc. 18-1 at 7-8.

Upon consideration of the law, the record, and the parties' arguments, the Court concludes that the ALJ's decision that Plaintiff retained the RFC for a full range of light work is supported by substantial evidence.  _Leggett_, 67 F.3d at 564.  The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments.  20 C.F.R. § 404.1545(a); _Myers v. Apfel_, 238 F.3d 617, 620 (5th Cir. 2001).  RFC refers to the most that a claimant is able to do despite her physical and mental limitations.  20 C.F.R. § 404.1545(a).  The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 404.1520(f).  In assessing a claimant's RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.  SSR 96-8p; 20 C.F.R. § 404.1523.

Here, the ALJ performed a thorough analysis of Plaintiff's condition based on the objective medical evidence, which indicated that while Plaintiff has some physical limitations, they are not disabling as demonstrated by the conservative treatment she received.  For example, the ALJ noted Plaintiff's normal spine studies and that imaging revealed only minimal degenerative changes and no impingement on the thecal sac.  Doc. 15-3 at 19-20, 22.  Plaintiff was advised to have outpatient physical therapy and to start a home exercise program.  Doc. 15-3 at 19.  Additionally, she had occasional injections and was given prescription pain medication

and muscle relaxants.  Yet the ALJ aptly noted that Plaintiff sometimes did not use prescription

pain medication and she had largely normal physical examinations in terms of her gait, muscle

strength, sensation, reflexes, range of motion, and straight leg raise test results.  Doc. 15-3 at 21-

22.  Plaintiff's orthopedist, Dr. Botesta, imposed only a few work restrictions on Plaintiff,

advising her to lift no more than 30 pounds, sit and stretch for 10-15 minutes every three to four

hours, and avoid twisting her back.  Doc. 15-12 at 124; Doc. 15-13 at 42.  On this record, the

ALJ's determination that Plaintiff physically could perform light work is supported by

substantial evidence.  *Leggett*, 67 F.3d at 564; 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining

"light work" as involving lifting no more than 20 pounds at a time with frequent lifting or

carrying of objects weighing up to 10 pounds.  Even if the weight lifted may be much less, a job

is in this category when it requires a good deal of walking or standing or involves sitting most of

the time with some pushing and pulling of arm or leg controls); Social Security Ruling 83-10,

1983 WL 31251, at *5-6 (noting that the "full range of light work requires standing or walking,

off and on, for a total of approximately 6 hours of an 8-hour workday" . . . "Sitting may occur

intermittently during the remaining time.").

   Further, the documents Plaintiff attaches to her summary judgment brief do not warrant a

remand of her case.  First, several of the documents post-date the ALJ's decision and concern

either a later-acquired alleged mental disability or a previously non-disabling mental condition

that has allegedly worsened.  Doc. 17 at 4-5, 9-10, 16-28, 37-41.  This is insufficient to justify

remand.  *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (stating that a case will be

remanded for consideration of new evidence if it relates to the time period for which benefits

were denied and does not concern either a later-acquired disability or the subsequent

deterioration of a previously non-disabling condition).  Other documents that Plaintiff submits

are already in the administrative record and have thus been considered previously.  Doc. 17 at 7-8.  The remainder of the documents Plaintiff submitted need not be considered because she has not demonstrated good cause for her failure to present them to the ALJ.  *Falco*, 27 F.3d at 164.  Moreover, the records consist almost entirely of social worker's and nurse's notes documenting Plaintiff's repeated requests for medical statements that she is disabled.  Doc. 17 at 29-37.  This does not constitute evidence that she is, in fact, disabled and may have had an adverse impact on her case rather than the opposite effect.  Otherwise, the records only briefly mention Plaintiff's moderate depression, a condition which she did not originally allege to be severe, and make note of her medication refills and two complaints of worsening pain.  The most these notes reflect is that Plaintiff's condition has deteriorated, which does not justify a remand.  *Falco*, 27 F.3d at 164.  Finally, while Plaintiff notes in her summary judgment motion that she suffers side effects from her medications, Doc. 17 at 2-3, she does not cite to any specific records or evidence to support an allegation of disability due to such effects.  In sum, the ALJ's decision was supported by substantial evidence.  *Leggett*, 67 F.3d at 564.

### IV.  <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 17, be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 18, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on February 3, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fᴇᴅ. R. Cɪᴠ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).*

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

11